MARY J. OSMOND, Appellee, *vs.* NELLIE EVANS, Appellant.

*Opinion filed October 27, 1915.*

1. FRAUD—*party alleging fraud must state the facts relied upon.* A party alleging fraud in a partition sale must state in the pleadings the facts relied upon to show fraud, and mere conclusions of the pleader, without averments as to the facts, are not sufficient.

2. JUDICIAL SALES—*when sale of three tracts en masse will not be set aside.* Where the land offered at a partition sale consists of the homestead tract, a woodland tract and two eighty-acre tracts having no buildings, and the tracts are first offered separately but no bid is made except for the woodland tract, and a bid is then received for the homestead and the two eighties *en masse,* it is not error to refuse a bid at a higher price per acre for the homestead alone, where it appears that no bids could be had on the eighty-acre tracts if detached from the homestead, and it is not shown that the amount bid was not a fair value for the land or that more would be realized at a re-sale.

3. SAME—*at a partition sale the land cannot always be sold to best advantage in separate tracts.* While land offered at a partition sale should first be offered in separate tracts, yet if the property cannot be sold to best advantage in separate tracts it should be offered in other combinations and sold in such a way as to bring the best results.

4. SAME—*party seeking re-sale should make an advance bid or guarantee against loss.* A party seeking to set aside a partition sale should make an advance bid or bring the money into court or should give a bond against loss on re-sale.

5. SAME—*what is not ground for setting aside sale.* The mere fact that land is sold *en masse,* without proof of injury, is not ground for setting aside a partition sale; nor is mere inadequacy of price sufficient, unless it is so gross as to raise, of itself, a presumption of fraud.

APPEAL from the Circuit Court of Kendall county; the Hon. MAZZINI SLUSSER, Judge, presiding.

BENJAMIN F. HERRINGTON, for appellant.

McDOUGALL & CHAPMAN, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed by appellee June 1, 1914, in the circuit court of Kendall county, for the partition of four tracts of land in that county. After the pleadings were settled a decree of partition was entered and commissioners were appointed, who reported it impossible to partition the land, and a decree was entered ordering the master to sell. Accordingly sale was made and decree entered confirming the same. From that decree this appeal was prosecuted.

The land in question was formerly owned by Wilson Evans. Mary J. Osmond, the appellee, is the only child of Evans, and the appellant was his second wife and widow. By various deeds made after Evans' death Mrs. Osmond owned an undivided two-thirds of the land and Mrs. Evans an undivided one-third. The first and second tracts of land contained 80 acres each, the third 52.84 acres, (being known as the homestead and upon which all the farm buildings were located,) and the fourth 17.55 acres of woodland. The master in his report of sale stated that he first offered the four tracts separately and received no bids, except one of $60 an acre for the woodland and one for $176 an acre for the homestead, but that he could get no bids on the 80-acre tracts unless they were combined with the homestead tract, and therefore he was compelled, in order to sell all the property, to dispose of the homestead and the two 80-acre tracts together; that after offering said tracts singly and in every other combination, and all four together, and receiving no further bids, he finally sold the homestead and the two 80-acre tracts together for $134 per acre and the woodland separately for $60 an acre. The total amount of said sale ($29,573) was more than two-

thirds of the appraised value. When the master made his
report of sale objections were filed by appellant, and after
a hearing by the court they were overruled. At this hear-
ing the testimony was mainly presented in the form of af-
fidavits. The commissioners appraised the two eighties at
$180 and $160 an acre, respectively, the homestead at $200
an acre and the woodland at $75 an acre. One witness
offered by appellant stated that he believed the homestead
was worth $200 an acre, the 160 acres from $160 to $180
an acre and the woodland from $75 to $100 an acre. The
other witness for appellant stated that the homestead was
worth $176 an acre, and one 80-acre tract from $160 to
$165 per acre and the other from $140 to $145 per acre.
Six witnesses testified for appellee that the land was sold
for what it was fairly worth; that the two 80-acre tracts
would not sell to any advantage except in connection with
the homestead, as all the farm buildings were on that tract.

Appellant contends that appellee and her counsel fraudu-
lently combined together to cause the bidding at the sale to
be "chilled" and thereby prevent a sale to persons not par-
ties to the partition suit. She contends, from her sworn
exceptions to the master's report and the testimony of two
witnesses, that while the master first offered the four tracts
separately, he afterwards refused to receive a bid for the
home place from her, or another person bidding for her, at
$176 per acre. The occurrences at the sale, according to
her contention, were somewhat as follows: That after each
of the four tracts was put up separately and no bid offered
except for the woodland tract, the master then offered the
other three pieces together; that the bids started at $120
an acre, and after several bids, finally one was made on
behalf of appellee for $134 per acre; that as the master
was about to declare the property sold to appellee, appel-
lant, through her counsel, bid $175 an acre for the home-
stead tract, which the master refused to receive, as he also
did a bid of $176 made by another person for appellant,

saying, in substance, that it was too late, as he had already offered the property separately and would not again so offer it. The six witnesses for appellee disagreed with the statement that the master refused to receive this bid. They corroborate the statement as made by the master in his report, that after this bid of $176 was made he tried to get bids for the two 80-acre tracts and nobody would bid on them separately or the two together, so that if he sold all the property at that time it was necessary for him to sell the homestead with the two 80-acre tracts.

Appellant further contends that Mrs. Osmond tried to discourage the bidding by saying, so that all persons present could hear, that she would not allow the homestead to be sold separately from the two 80-acre tracts. Appellant further contends that a conspiracy by the appellee and her counsel to prevent bidding by other parties and to injure appellant is shown by the history of a previous master's sale of this property in this same proceeding, which had been set aside by the court by agreement of all parties. The only proof on this matter outside of the exceptions sworn to by appellant is the bare statement in the record that there was such a sale. Appellant, in her sworn exceptions, states that at such former sale counsel for appellee stated that his client would allow her two-thirds interest to remain as a loan at five per cent, and as a result of this offer she (appellant) bid in the entire tract at $154 an acre, but when she afterwards tried to make arrangements with appellee and her counsel for the loan, they refused to carry out their promise and she was unable to raise the money to comply with her bid, and hence it was necessary to have the first sale set aside and the property re-advertised. Conceding, for the purpose of the argument, that the matters contained in the exceptions are true, we do not see, on this statement of the facts, how appellant was fraudulently injured by appellee in making any bid she desired at the second sale or making other arrangements to

raise the money if she desired to stand by her original bid. A party alleging fraud must state in his pleadings the facts relied upon to show fraud. The mere conclusions of the pleader, without averments as to facts, as in these exceptions to the report of sale, will not support allegations of fraud. (*Harrigan* v. *County of Peoria,* 262 Ill. 36, and cases there cited.) Furthermore, we find nothing in this record, except these conclusions in said exceptions, that in the remotest way suggests fraud on the part of appellee or her counsel or that their actions in any way discouraged or "chilled" bidding, as insisted by appellant.

Appellant further insists here, as in the court below, that the sale should be set aside because the master refused to accept appellant's bid for the home place and sold said home place and the two eighties *en masse* to appellee. The purpose of a partition sale, when the land cannot be partitioned, is to sell all of the property at the highest price possible. It would be of little use to the parties interested to sell one or two of these tracts alone, even though they were sold for a higher price, if the other tracts could not be sold at all unless in conjunction with the home place. It has been repeatedly held by this court that in partition sales the land must be first offered in separate tracts, but it is also the settled rule that if the property cannot be sold to the best advantage in separate tracts then it should be offered in other combinations and sold in such a way as to bring the best results, taking all the property together. (*Phelps* v. *Conover,* 25 Ill. 309; *VanValkenburg* v. *Trustees of Schools,* 66 id. 103; *Fairman* v. *Peck,* 87 id. 156; *Ward* v. *Ward,* 174 id. 432.) It has also been held that even though the property has been sold *en masse* without offering the different tracts separately, the sale will then only be set aside on the ground of fraud or when someone has been prejudiced by such sale. (*Ross* v. *Mead,* 5 Gilm. 171; *Gillespie* v. *Smith,* 29 Ill. 473; *Kerfoot* v. *Billings,* 160 id. 563.) There are no such circumstances connected

with this case to justify setting aside the sale as were shown in *Mansfield* v. *Wallace*, 217 Ill. 610, and *Haggerty* v. *Haggerty*, 268 id. 295. Moreover, there is no satisfactory proof in this record that the property did not sell for what it was fairly worth. While it is the duty of the master in making a sale to offer the land in parcels and the sale will be set aside on a proper showing if he fails to follow this rule, yet the mere fact of selling *en masse*, without proof of injury, will not justify the court in setting aside said sale. (*Bowen* v. *Bowen*, 265 Ill. 638.) There is no proof in this record that if this sale were set aside the property would bring a higher price. While appellant and her two witnesses state that in their opinion some of the property was worth more than it brought, that is a mere opinion without satisfactory showing that the property would be sold for more if this sale were set aside. The record shows that this last sale was fully advertised, not only by the master but by counsel for appellant. This court has held repeatedly that where a sale of this kind is objected to, the objectors asking a re-sale should bring the money into court, or make an advance bid, or give a guaranty or bond that there will be no loss on a re-sale. (*Quigley* v. *Breckenridge*, 180 Ill. 627, and cases cited; *Wilson* v. *Ford*, 190 id. 614; *Kiebel* v. *Leick*, 216 id. 474; *Abbott* v. *Beebe*, 226 id. 417; *Schulz* v. *Hasse*, 227 id. 156.) No such offer or guaranty of any kind was made on the hearing in the court below. For this reason, if for no other, the trial court did not err in refusing to set aside the sale. It is true that the price for which the property was sold was considerably less than that fixed by the appraisers, but "real estate rarely ever brings its full value at a forced sale for cash in hand." (*Allen* v. *Shepard*, 87 Ill. 314.) Inadequacy of price in the sale of lands is not sufficient, alone, to set aside a sale unless it is so grossly inadequate as in itself to raise the presumption of fraud. (*Heberer* v. *Heberer*, 67 Ill. 253; *Quick* v. *Collins*, 197

id. 391; *Abbott* v. *Beebe, supra.*) "Public policy requires stability in all judicial sales and that they should not be disturbed for slight causes. To do so would impair that confidence so essentially necessary to induce persons to become purchasers when real estate is offered for sale under a judgment or decree of a court." *Conover* v. *Musgrave,* 68 Ill. 58; *Abbott* v: *Beebe, supra.*

We find no error in the record. The decree of the circuit court will therefore be affirmed.        *Decree affirmed.*